UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

LOUIS L. VANESS and RUTH E. VANESS,

        Plaintiffs,

WISCONSIN PHYSICIAN SERVICE,

        Involuntary Plaintiff,

v.                                                                                                      Case No. 17-C-73

EAST BELLEVUE OWNER, LLC; and
21 EAST BELLEVUE MANAGEMENT, LLC,

        Defendants.

---

## ORDER DENYING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT

---

Plaintiffs Louis VanEss and Ruth VanEss, both Wisconsin residents, filed this diversity action for damages resulting from injuries Louis VanEss sustained after tripping over a floor railing inside the Thompson Hotel in Chicago, Illinois. In their second amended complaint, the plaintiffs allege that the negligence of defendants East Bellevue Owner, LLC (East Bellevue), a Delaware Limited Liability Company with its principal place of business in Chicago, Illinois, and 21 East Bellevue Management, LLC (21 East), likewise a Delaware Limited Liability Company with its principal place of business in Chicago, Illinois, caused Louis VanEss' injuries and Ruth VanEss' loss of consortium with her husband. The court has jurisdiction over the claims pursuant to 28 U.S.C. § 1332. Currently before the court are two motions for summary judgment, one from East Bellevue and one from 21 East. For the reasons that follow, both motions will be denied.

**BACKGROUND**

East Bellevue is the fee title owner of the Thompson Hotel. The hotel is operated and managed by Thompson Sutton Associates pursuant to a hotel management agreement executed in 2011. Shortly after the management agreement was signed, the hotel underwent an extensive renovation between 2012 and 2013. During this renovation process, a floor railing beneath the lobby stairway was installed. The architect for the renovation was Hartshorne Plunkard, Ltd., and the contractor was Power Construction Company, LLC. On September 18, 2013, the City of Chicago issued a Certificate of occupancy for the hotel that stated "THE CITY OF CHICAGO HEREBY CERTIFIES THAT . . . ALL CONSTRUCTION AND OTHER WORK HAVING BEEN COMPLETE . . . CONFORMS TO THE GENERAL, SPECIFIC, AND STRUCTURAL REQUIREMENTS OF THE APPLICABLE PROVISIONS OF THE MUNICIPAL CODE OF THE CITY OF CHICAGO." ECF No. 98-8. Defendant 21 East, pursuant to a restaurant management agreement between it and East Bellevue, manages and operates a restaurant—the Nico Osteria Restaurant—located on the first and second floors of the hotel.

On March 13, 2015, the plaintiffs checked into the Thompson Hotel. Around noon, Louis and Ruth left the hotel to get lunch with family and friends who were also staying at the hotel. After returning to the hotel, the plaintiffs went to their room for fifteen minutes before taking the elevator back down to the hotel lobby to meet their family and friends who were already waiting for them. Upon exiting the elevator, the plaintiffs turned left and started walking towards their friends and family who were standing in a lounge area of the restaurant. Between the plaintiffs and their friends and family was an open-rise stairway that leads from the lobby up to the second floor. Situated

2

beneath the staircase is a floor railing, pictured below, that was installed to keep hotel guests from walking underneath the stairway.



The floor railing consists of two ten-and-a-half feet long 2x1-inch steel bars connected by one perpendicular bar, all of which are situated six inches above the floor with five inches of vertical ground clearance.

Louis was walking ahead of Ruth after exiting the elevator. Louis walked about twenty feet towards his friends and family before he tripped and fell over the floor railing underneath the stairs as he attempted to walk underneath the stairs. The height of the staircase where Louis fell was more than six feet, high enough such that he did not have to duck to proceed under it. At the time that he tripped, Louis was looking towards his friends and family and not down at the ground. Ruth, who was following behind Louis, also tripped and fell on top of Louis. Louis suffered a torn rotator cuff in his right shoulder that required surgery as a result of the fall and has some permanent

impairment. Neither defendant is aware of any other incidents involving the floor railing prior to this incident.

Both defendants argue that they cannot be held liable for the plaintiffs' injuries because they owed no duty of care to them. East Bellevue argues that it took no action that caused or contributed to the accident and denies that it was in control of the area where it occurred. East Bellevue contends that although it owned the building in which the accident occurred, both the hotel and the restaurant were managed by other entities. East Bellevue contends that it had turned over management of the hotel to Thompson Sutton and management of the restaurant to 21 East. Since it retained no control over the area in which the accident occurred, East Bellevue contends it cannot be considered a possessor of the premises and thus owed no duty to invitees, such as the VanEsses. 21 East likewise contends that it owed no duty to the plaintiffs to protect them from such risk of harm because it did not design, construct or install the floor railing over which Louis VanEss tripped. Its only duty was to keep the area clean. Both defendants also contend that any risk of harm created by the railing was open and obvious.

**LEGAL STANDARD**

Summary judgment is appropriate when the movant shows there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The party opposing the motion for summary judgment must "submit evidentiary materials that set forth specific facts showing that there is a genuine issue for trial." *Siegel v. Shell Oil Co.*, 612 F.3d 932, 937 (7th Cir. 2010) (citations omitted). "The nonmoving party must do more than simply show that there is some metaphysical doubt as to the material facts." *Id.* Summary judgment is properly entered against a party "who fails to make a showing to establish the existence of an element

4

essential to the party's case, and on which that party will bear the burden of proof at trial." *Austin v. Walgreen Co.*, 885 F.3d 1085, 1087–88 (7th Cir. 2018) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

**ANALYSIS**

**A.     Conflict of Law Analysis**

A threshold issue in the case is what law applies. That issue is significant because Wisconsin's safe place statute, Wis. Stat. § 101.11(1), imposes a higher standard of care on employers and owners of places of employment or public buildings than is imposed under the common law. Illinois does not have such a law. The court must therefore determine which States' law applies. Plaintiffs are residents of the State of Wisconsin, but the site of the accident is Illinois. "A federal court sitting in diversity looks to the conflict-of-laws rules in the state jurisdiction in which it sits in order to choose the substantive law applicable to the case." *GATX Leasing Corp. v. Nat'l Union Fire Ins. Co.*, 64 F.3d 1112, 1114 (7th Cir. 1995). The court therefore looks to Wisconsin's conflict-of-laws rules to determine which State's laws apply.

Under Wisconsin law, "'the law of the forum should presumptively apply unless it becomes clear that nonforum contacts are of greater significance.'" *Drinkwater v. Am. Family Mut. Ins. Co.*, 2006 WI 56, ¶ 40, 290 Wis. 2d 642, 714 N.W.2d 568 (quoting *State Farm Mut. Auto Ins. Co. v. Gillette*, 2002 WI 31, ¶ 51, 251 Wis. 2d 561, 641 N.W.2d 662). "This requires Wisconsin's connections with the facts of the claim to be 'so obviously limited and minimal that application of that state's law constitutes officious intermeddling.'" *Kohler Co. v. Kopietzki*, No. 13-CV-1170, 2016 WL 1048036, at *2 (E.D. Wis. Mar. 11, 2016) (quoting *Beloit Liquidating Trust v. Grade*, 2004 WI 39, ¶ 24, 270 Wis. 2d 356, 677 N.W.2d 298) (internal quotations and citations omitted)).

5

In determining which state has the more significant relationship, the following factors, among others are considered: "the place where the injury occurred, the place where the conduct causing the injury occurred, the residence or nationality of the parties, and the place where the relationship between the parties is centered." (citing RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 145(2) (1971)).

Here, these considerations weigh in favor of applying the law of Illinois. The case arises out of an injury Louis sustained at a hotel in Chicago, Illinois. Aside from the fact that the plaintiffs are Wisconsin residents, this action is centered around what took place in Illinois. Illinois is where the injury and the alleged negligence of the defendants occurred. It is also where the defendants' principal places of business are located. Plaintiffs elected to travel to the State of Illinois and stay at a Chicago hotel, thereby subjecting themselves to Illinois law. *See Spinozzi v. ITT Sheraton Corp.*, 174 F.3d 842, 844–45 (7th Cir. 1999). Given that the contacts with Illinois are of greater significance, the court will apply Illinois law to this case.

**B.     Duty Under Illinois Law**

The Supreme Court of Illinois has described the concept of duty in negligence cases as a policy determination that is "very involved, complex and indeed nebulous." *Mieher v. Brown*, 54 Ill. 2d 539, 545, 301 N.E.2d 307 (1973). The "touchstone" of the court's duty analysis under Illinois law "is to ask whether a plaintiff and a defendant stood in such a relationship to one another that the law imposed upon the defendant an obligation of reasonable conduct for the benefit of the plaintiff." *Marshall v. Burger King Corp.*, 222 Ill. 2d 422, 436, 856 N.E.2d 1048 (2006) (citing *Happel v. Wal–Mart Stores, Inc.*, 199 Ill. 2d 179, 186, 766 N.E.2d 1118 (2002)). "The 'relationship' referred to in this context acts as a shorthand description for the sum of four factors: (1) the reasonable foreseeability of the injury, (2) the likelihood of the injury, (3) the magnitude of

6

the burden of guarding against the injury, and (4) the consequences of placing that burden on the defendant." *Simpkins v. CSX Transp., Inc.*, 2012 IL 110662, ¶ 18, 965 N.E.2d 1092.

Although individuals and businesses do not owe an affirmative duty to protect or rescue a stranger, the Illinois Supreme Court has "has long recognized that 'every person owes a duty of ordinary care to all others to guard against injuries which naturally flow as a reasonably probable and foreseeable consequence of an act, and such a duty does not depend upon contract, privity of interest or the proximity of relationship, but extends to remote and unknown persons.'" *Id.* at ¶ 19 (quoting *Widlowski v. Durkee Foods*, 138 Ill. 2d 369, 373, 562 N.E.2d 967 (1990)). "Thus, if a course of action creates a foreseeable risk of injury, the individual engaged in that course of action has a duty to protect others from such injury." *Id.* But even where one has not created a risk of harm by his own actions, an affirmative duty to act may arise where a legally recognized "special relationship" exists between the parties. *Id.* at ¶ 20. Illinois law recognizes "four relationships that give rise to an affirmative duty to aid or protect another against an unreasonable risk of physical harm: 'common carrier and passenger, innkeeper and guest, custodian and ward, and possessor of land who holds it open to the public and member of the public who enters in response to the possessor's invitation.'" *Id.* (quoting *Marshall*, 222 Ill. 2d at 438).

With respect to possessors of land, Illinois has adopted § 343 of the Restatement (Second) of Torts, which states:

> A possessor of land is subject to liability for physical harm caused to his invitees by a condition on the land if, but only if, he
>
> (a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and

7

(b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and

(c) fails to exercise reasonable care to protect them against the danger.

*Deibert v. Bauer Brothers Constr. Co.*, 141 Ill. 2d 430, 566 N.E.2d 239 (Ill. 1990) (citing RESTATEMENT (SECOND) OF TORTS § 343, at 215–16 (1965)); *see also Reddick v. Dillard's Inc.*, No. CIV.08-844-CJP, 2010 WL 1752555, at *1 (S.D. Ill. Apr. 30, 2010) (applying Illinois law); *Gentry v. Shop 'n Save Warehouse Foods, Inc.*, 708 F. Supp. 2d 733, 736–37 (C.D. Ill. 2010) (applying Illinois law). The Restatement further defines a "possessor of land" as:

(a) a person who is in occupation of the land with intent to control it or

(b) a person who has been in occupation of land with intent to control it, if no other person has subsequently occupied it with intent to control it, or

(c) a person who is entitled to immediate occupation of the land, if no other person is in possession under Clauses (a) and (b).

RESTATEMENT (SECOND) TORTS § 328E. "This emphasis on control is in keeping with the reason behind imposing premises liability, namely, that 'the person in possession of property ordinarily is in the best position to discover and control its dangers, and often is responsible for creating them in the first place.'" *Madden v. Paschen*, 395 Ill. App. 3d 362, 375, 916 N.E.2d 1203 (Ill. App. Ct. 2009) (quoting W. Keeton, PROSSER & KEETON ON TORTS § 57, at 386 (5th ed. 1984)).

These are the principles of law that govern the court's analysis.

**C. Affirmative Actions or Special Relationship Between Plaintiffs and Defendants**

Applying these principles to the facts taken in the light most favorable to the plaintiffs, both East Bellevue and 21 East had a duty to protect the plaintiffs from the risk of harm created by the floor rail over which Louis VanEss tripped, either because of affirmative actions they took that gave

8

rise to that risk or because of their special relationship to the plaintiffs that could give rise to an affirmative duty to protect them from a foreseeable risk of physical harm. East Bellevue argues that it owed no duty to the plaintiffs because it holds only fee title to the land and was not in possession of it. East Bellevue contends that Thompson Sutton, the hotel manager, had physical possession, management, and control of the land at the time VanEss was injured. Thus, if anyone had a duty, East Bellevue contends, it would be Thompson Sutton.

The Restatement, however, "recognizes that a person may conduct activities on a land or be in charge of the land without being the possessor." *O'Connell v. Turner Const. Co.*, 409 Ill. App. 3d 819, 825, 949 N.E.2d 1105 (Ill. App. Ct. 2011). Although the hotel management agreement gave the hotel manager "exclusive right during the Term to supervise, direct and control the management, operation and promotion of the Hotel," ECF No. 98-5 at 2–3, "one who controls the land on behalf of another is not the possessor and that limited control of the land does not equate possession." *O'Connell*, 409 Ill. App. 3d at 825. Further, the hotel management agreement explicitly states that the hotel manager "does not have a leasehold or other possessory interest in the Hotel." ECF No. 98-5 at 3. While the hotel manager may have been in charge of the operation of the hotel, East Bellevue still retained ownership of the land itself. Further, the floor railing was not installed at the direction of the hotel manager in its role as hotel manager, but under the oversight of East Bellevue during the renovation of the hotel.

Similarly, the fact that 21 East did not design, construct or install the floor rail does not mean it was not a possessor of the area within the meaning of the Restatement. 21 East was required to maintain the area under its contract with East Bellevue. 21 East views this obligation as limited to cleaning the area and removing any litter or trash. But after the accident occurred, 21

9

East exercised control over the area by repositioning some bookcases that were under the staircase so that they would prevent others from walking in the area where the floor rail was located and where Louis VanEss tripped. Moreover, the evidence suggests that East 21 also had a legally recognized special relationship with the plaintiffs in that it was serving as an innkeeper and they were arriving as guests. This is sufficient to give rise to a duty on the part of 21 East to protect the plaintiffs from a dangerous condition just outside its restaurant.

It thus follows that neither defendant is entitled to summary judgment on the ground that they engaged in no action or had no relationship sufficient to give rise to a duty to the plaintiffs. We therefore turn to consider the other four factors that inform the negligence analysis under Illinois law.

**D.      Foreseeability, Likelihood, Magnitude, and Consequences**

The first such factor is foreseeability: Was the risk of injury reasonably foreseeable? Both East Bellevue and 21 East argue that the risk of injury was not reasonably foreseeable because there is no evidence that anyone had tripped over the floor railing before the plaintiffs. In the absence of such prior notice, the defendants argue that the risk of harm was not reasonably foreseeable.

The fact that no one had previously tripped over the floor rail, or at least no one reported to the defendants that they had tripped, does not mean that the risk of injury from someone tripping was not foreseeable. A rail set only six inches off the floor in what reasonably appears to be a passageway under a staircase in a public building would seem to be the kind of condition that could easily lead to precisely the kind of accident that occurred here. Particularly where, as here, there is evidence that the area in which the floor rail was located was in a shadow and the rail was not painted with a bright color in contrast with the color of the floor, it is at least a jury question as to

10

whether a reasonable person should have foreseen the risk of someone tripping over it. Neither East Bellevue nor 21 East contend they were not aware of the floor railing and its location under the stairway. Indeed, it appears it was placed at that location to prevent people from hitting their heads on the staircase. Yet, it hardly seems reasonable to place an obstacle at ankle level to protect the public from an obstacle at eye level, especially when the first obstacle is extended beyond the area where the second obstacle even exists.

At the very least, the evidence is sufficient to allow a jury to find constructive notice of a risk of harm. "'To prove constructive notice, a plaintiff must show that the hazardous condition existed for a sufficient amount of time or that, through the exercise of reasonable care, the defendant should have discovered the dangerous condition.'" *Hanna v. Creative Designers, Inc.*, 2016 IL App (1st) 143727, ¶ 35, 63 N.E.3d 1036 (quoting *Hornacek v. 5th Avenue Prop. Mgmt.*, 2011 IL App (1st) 103502, ¶ 29, 959 N.E.2d 173). For the reasons already set forth, a jury could find that the defendants had notice.

The next factor to consider is the likelihood of the injury. This is quite high, given the surrounding circumstances. The risk at issue is a fall on a hard surface. Given the location of the hazard, i.e., a corridor open to the public inside a hotel adjacent to the hotel restaurant, and the age range of the individuals likely to encounter it, the likelihood of injury to a member of the public, assuming they do not see the rail, is extremely high.

Turning to the magnitude of the burden to guard against the risk, it is minimal. All that is required is for the defendants to take steps to prevent invitees from walking under the stairway in the first place, preventing them from encountering the floor railing and avoiding the risk of harm it presents. Supporting this is the fact that 21 East was able to rearrange bookcases that were

11

already underneath the stairwell such that they were up against the railing and thereby served as an obvious barrier to walking under the staircase. Although evidence of subsequent remedial measures is not admissible for the purpose of proving negligence, it is admissible for purposes of proving "ownership or control, existence of duty, and feasibility of precautionary measures." Fed. R. Evid. 407, Advisory Committee Notes.

Lastly, addressing the consequences of placing that burden on the defendant, "the existence of a duty turns in large part on public policy considerations." *Pullia v. Builders Square, Inc.*, 265 Ill. App. 3d 933, 940, 638 N.E.2d 688 (Ill. App. Ct. 1994). The "policy justifying the business invitor's duty of reasonable care is related to the affirmative action the invitor takes in opening his business to the public and to the potential for harm that a business open to the general public poses." *Marshall*, 22 Ill. 2d at 411. Here, the consequences of placing the duty on the defendants is minimal. Weighing all of these factors, a jury could find that the defendants were negligent in failing to take steps to mitigate the risk of harm created by the floor rail.

### E. Open and Obvious

The defendants also contend they had no duty to the plaintiffs because the floor railing was an open and obvious hazard. Under the open and obvious rule, "a party who owns or controls land is not required to foresee and protect against an injury if the potentially dangerous condition is open and obvious." *Bruns v. City of Centralia*, 2014 IL 116998, ¶ 16, 21 N.E.3d 684 (internal quotation marks omitted). "Obvious" means that "both the condition and the risk are apparent to and would be recognized by a reasonable man, in the position of the visitor, exercising ordinary perception, intelligence, and judgment." *Id.* (quoting RESTATEMENT (SECOND) OF TORTS § 343A cmt. b, at 219 (1965)). "Application of the open and obvious rule affects the first two factors of the duty analysis:

the foreseeability of injury, and the likelihood of injury. Where the condition is open and obvious, the foreseeability of harm and the likelihood of injury will be slight, thus weighing against the imposition of a duty." *Id.* at ¶ 19.

Plaintiffs dispute that the floor railing was open and obvious, asserting that its color, size, and location make it difficult to see. In support of their claim, the plaintiffs rely not only on their own observations but also on the report of their expert, Lee Martin, which states that "[t]he floor railings below the lobby stairway at the hotel would not be conspicuous to pedestrians due to their small size, lack of contrast, and location in the shadow of the stairway above." ECF No. 110-1 at 13. Given this evidence, the question of whether the hazard created by the floor railing was open and obvious is a factual issue that a jury must decide. *See Wade v. Wal-Mart Stores, Inc.*, 2015 IL App (4th) 141067, ¶ 18, 39 N.E.3d 1141 ("Where a court cannot conclude as a matter of law that a condition poses an open and obvious danger the obviousness of the danger is for the jury to determine.").

### F. Proximate Cause

Regardless of whether it owed a duty to Louis, East Bellevue contends that it is still entitled to summary judgment because the plaintiffs cannot establish that its negligence was the proximate cause of Louis' injuries. "[P]roximate cause of an injury is, in most cases, a question of fact to be determined from all the attending circumstances." *Parikh v. Gilchrist*, 2017 IL App (1st) 160532, ¶ 28, 89 N.E.3d 1015. "It can only be a question of law when the facts are not only undisputed but also such that there can be no difference in the judgment of reasonable people as to the inferences to be drawn for them." *Id.* In support of its contention, East Bellevue points to the findings section of Martin's expert report where he states that "[t]he failure of Nico Osteria, One Off Hospitality

13

Group, Ltd., Two Roads Hospitality, and AJ Capital Partners, LLC . . . was the cause of the Van Ess fall and injury." ECF No. 110-1 at 13. There is no mention of East Bellevue. As the plaintiffs point out, however, earlier in is report Martin states "[t]he failure of . . . Owner . . . to maintain the area beneath the lobby stairway in a safe manner violated the standard of care for operation and maintenance of pedestrian walkways that are part of the required means of egress, and was the cause of the Van Ess fall and injury." ECF No. 110-1 at 12. Regardless of Martin's opinion, the evidence is more than sufficient to support a jury's verdict that East Bellevue was negligent and that its negligence was a proximate cause of the plaintiffs' injuries.

## CONCLUSION

For all of the foregoing reasons, the defendants' motions for summary judgment (ECF Nos. 95, 100) are **DENIED**.

**SO ORDERED** this  15th  day of January, 2019.

s/ William C. Griesbach
William C. Griesbach, Chief Judge
United States District Court
